UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-61399-CIV-MIDDLEBROOKS/JOHNSON

BELINDA CHEVALIER,

    Plaintiff.

vs.

MICHAEL O. LEAVITT, as Secretary
of the Department of Health and
Human Services,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This Cause comes before the Court on Plaintiff's Motion for Summary Judgment (DE 18) and Defendant's Motion for Summary Judgment (DE 22). The Court has reviewed the record and is fully advised in the premises.

**I. Background**

Plaintiff Belinda Chevalier ("Chevalier") is a Medicare beneficiary enrolled in the Humana Medical Plan, a Medicare plus Choice (managed care) plan. This action is a request for judicial review of a final Department of Health and Human Services administrative decision denying Plaintiff's request for health care services from a specific surgeon.

On September 9, 2004, Humana denied Plaintiff's request to receive surgical services from Dr. Rahul K. Nath, a surgeon practicing in Texas. AR 00814.[1] Chevalier sought

---

[1] Citations to the administrative record will be noted as "AR" followed by the relevant page number.

reconsideration of Humana's decision and, on September 26, 2004, Humana issued a denial upon reconsideration. AR 00638-00639, 00812. Following proper review procedures, Chevalier next appealed to the Maximus Center for Health Dispute Resolution ("CHDR"). On October 19, 2004, the Maximus CHDR issued a decision agreeing with Humana's decision. AR 00782-00783. Plaintiff appealed to an administrative law judge ("ALJ") and multiple depositions were taken on the matter. The ALJ held a hearing on November 2, 2005. AR 00922 - 01017. In a decision dated December 29, 2005, the ALJ held that Humana was not required to pay for the services that Plaintiff requested to have performed by Dr. Nath. AR 00065-00072. Chevalier appealed the ALJ's decision to the Medicare Appeals Council and, on August 22, 2006, the Medicare Appeals Council announced that it found no basis, under the pertinent Medicare regulatory standards, to review the ALJ's decision. AR 00003. The ALJ's decision stands as the final decision of the Secretary of HHS. AR 00003. Chevalier then filed the instant suit for review of the final administrative decision.

**II. Facts From the Administrative Record and ALJ Opinion**

Plaintiff was born in 1973. AR 00434, 00237. She lives in Pembroke Pines, Florida. Medicare is the federal health insurance program for elderly and disabled individuals. *See generally* 42 U.S.C. §§ 1395 et seq. Under Part C of the Medicare program (known at all times pertinent to this case as Medicare + Choice), a Medicare beneficiary may choose to enroll in a Medicare managed care plan operated by an organization that contracts with HHS for this purpose. AR 00434; see AR 00987.

On March 6, 1997, Plaintiff was injured in a motorcycle accident. AR 00435, 00926. She

sustained a left brachial plexus injury. As a result, Plaintiff has had complete paralysis of her left forearm and hand. AR 00343. She cannot grasp anything with her left hand. AR 00450. She has worn a left arm brace since the injury, in order to protect her arm. AR 00447.

Plaintiff was evaluated at the University of Miami, after the injury, AR 00439-00440, and again several years later, AR 00440. (Plaintiff was referred there by the orthopedist who first treated her after the injury. AR 00441.) At the University of Miami, Plaintiff was evaluated by a surgeon who was "a hand specialist and [specialist in] orthopedic surgery." AR 00441. At their initial encounter, the surgeon suggested an amputation of Plaintiff's injured arm. AR 00440. At a later encounter, the surgeon "wanted to put [Plaintiff] through muscular stimulators and . . . wanted to do some exploratory surgery." AR 00440-00441. Plaintiff did not pursue those options, as she was uncomfortable going to a physician who at one point suggested amputation of her arm. AR 00441.

In late 1999, Plaintiff began receiving Social Security disability benefits. AR 00436, 00977-00978. She then became eligible for Medicare benefits. See AR 00927. Plaintiff elected to enroll in Humana Medical Plan, a Medicare + Choice managed care plan.  The service area for this plan is Broward County, Florida. AR 00560; see AR 00237. Plaintiff's primary physician under the Humana plan is Dr. Arturo Logrono. AR 00487. Dr. Logrono is a board-certified internist. AR 00489.

Dr. Logrono first saw Plaintiff in July 2003. AR 00496, 00927. At that time, Plaintiff was already six years post-injury. See AR 00435, 00926. Plaintiff already had muscle atrophy in her left arm. AR 00500. In April 2004, Dr. Logrono ordered nerve conduction studies and an electromyogram of Plaintiff's left arm. AR 00514-00515. The tests showed total paralysis. AR

00516. Plaintiff did receive physical therapy. AR 00438. Humana referred Plaintiff to the physical therapy and covered the services. AR 00524, 00525, 00447-00448. From the physical therapy, Plaintiff did achieve some improved "flexibility and strength," AR 00445-00446, and "range of motion." AR 00448; see AR 00532. Humana also supplied Plaintiff with a muscle stimulator to aid her physical therapy routine. AR 00451, 00979.

At some time in the first half of 2004, Plaintiff had a conversation about her arm with a stranger in a store. AR 00979. The woman mentioned "Texas, the Children's Hospital" to Plaintiff. AR 00980. Subsequently Plaintiff located Dr. Rahul Nath on the Internet, and she contacted his office. AR 00980. Dr. Nath is not a Humana network provider and practices solely in Houston, Texas. AR 00402. Dr. Nath does not perform surgery nor maintain an office anywhere in Florida. AR 00403. The treatment of children comprises about 75 percent of Dr. Nath's surgical practice. AR 00368. By phone, Dr. Nath and Plaintiff discussed her undergoing a contralateral C7 nerve graft and muscle graft. AR 00385. This discussion was based on Dr. Nath's review of some papers and a videotape of Plaintiff, rather than an in-person clinical examination of Plaintiff. AR 00407; *see generally* AR 00989-00991. Dr. Nath acknowledges this is "a very unusual surgery." AR 00419. He acknowledges that the surgery may result in no recovery of function. AR 00410. Dr. Nath "assumed" Plaintiff had gotten another opinion about the surgery. AR 00420. Dr. Nath has never performed this surgery on a 32 year old adult with an 8 year old brachial plexus injury. AR 00406-00407.

Plaintiff had located Dr. Nath on her own. Plaintiff's Humana plan physician, Dr. Logrono, had no prior familiarity with Dr. Nath. AR 00520. Dr. Logrono did not refer

4

Plaintiff to Nath. AR 00519. Dr. Logrono did not send Nath any records directly, and Dr. Logrono was not supplied with any report from Dr. Nath. AR 00523. Dr. Logrono's first chart notation indicating that Plaintiff was interested in surgery was made in May 2004, after Plaintiff had made her contact with Dr. Nath. AR 00519.

When Chevalier indicated her interest in surgery with Dr. Nath, Humana referred Plaintiff to a specialist in the local area, Dr. John Grossman, who examined Plaintiff in his office on August 24, 2004. AR 00332-00333, 00442. Dr. Grossman is not a member of Humana's network, but he has delivered services to Humana enrollees on referral from Humana. AR 00325; see AR 00347, 00477. Dr. Grossman's office is in Miami. AR 00321-00322, 00339-00340. He has hospital privileges at several South Florida hospitals. AR 00323. Dr. Grossman is a surgeon with Board certification in plastic surgery. AR 00322, 00323. His area of specialization is hand and peripheral nerve surgery. AR 00322; see AR 00099 et seq. The surgical treatment of patients with brachial plexus injuries is one of his areas of expertise. AR 00324. He has performed reconstructive surgery on such patients, including later repairs to attempt to restore some degree of function. AR 00324. Dr. Grossman was previously a co-director of the Brachial Plexus Program at the New York University Medical Center. See unnumbered page following AR 00101. Dr. Grossman believes brachial plexus injuries are best treated by means of direct nerve repair of the injured nerves in the "first three to six months after [the] injury." AR 00326. Indeed, the repair should be done "[a]s soon as possible[,] really..." AR 00326-00327.

Based on his clinical examination of Plaintiff, Dr. Grossman noted Plaintiff's status as typical of patients who sustain brachial plexus injuries as adults. AR 00327. In Dr.

Grossman's experience, such patients face "very limited" prospects for restoration of any significant function, even when they undergo surgery shortly after the injury. AR 00328. Indeed, even in "the very best case scenario," the prognosis for these patients is "extremely poor." AR 00328. This prognosis is well-documented in the professional literature. See AR 00328.

      Dr. Grossman believes reconstructive options are "extremely limited" for a person as many years post-injury as Plaintiff. AR 00091. However, Dr. Grossman did suggest that Plaintiff might undergo a lateral antibrachial transfer to restore some limited hand protective sensibility, combined with a wrist arthrodesis. AR 00337, 00091. This course could yield some "limited but worthwhile improvements." AR 00091. However, Dr. Grossman did not think a contralateral C7 nerve transfer appropriate. He does not perform contralateral C7 nerve transfers. AR 00330. Indeed, he finds the procedure objectionable. AR 00330. He does not recommend it. AR 00356. Dr. Grossman believes it is "wrong," when a patient has sustained an injury on one side, to "go fool around with the other side." AR 00330. He is not aware that the procedure has "realized any significant return of function" for patients. AR 00331. He has seen no reports in the professional literature to suggest that the surgery yields meaningful improvement. See AR 00349, 00356. To the contrary, Dr. Grossman has seen patients "who have suffered significant disability on their good arm" from having had contralateral C7 transfers. AR 00331, 00335. In sum, Grossman believes the risks of further damage to Plaintiff from a contralateral C7 transfer would "far outweigh any documented . . . benefits." AR 00336.

      On September 9, 2004, Humana issued a notice denying Plaintiff's request for

services from Dr. Nath. AR 00814. The notice read, in pertinent part:

> REASON FOR DENIAL:
> Your request for referral to an out of network non-par[ticipating] surgeon is being denied because your primary care physician has referred you to a participating subspecialist within the market area, who is an expert regarding the treatment for your condition. This sub-specialist, Dr. Grossman, has indicated that he does not feel that the procedure recommended by the non-participating specialist is appropriate for your condition. Dr. Grossman has recommended an alternative surgery for your condition.

### III. Legal Analysis

Medicare falls under the Social Security Act, and the standard for judicial review in this case is that applied in reviews of Social Security rulings. *See* 42 U.S.C. §§ 405(h)(g). In my review of the case, I must defer to the HHS ruling if it is supported by substantial evidence. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). I am not permitted to decide the facts anew, re-weigh the evidence, or substitute my judgment for that of the ALJ. *See Id.*

The ALJ found that Humana was not obligated to pay for a surgical procedure performed by Dr. Nath, as he was not a Humana plan provider, and Humana had met its obligation to Plaintiff by referring her to Dr. Grossman. Defendant's obligation to Plaintiff is to furnish, arrange, or make payment for all services that are covered by Medicare, and that are available to beneficiaries residing in the plan's service area. *See* 42 C.F.R. §422.101(a).

It is undisputed that Dr. Nath is not a Humana plan provider, and that he does not practice in the Plaintiff's South Florida service area. When Plaintiff elected to enroll in her managed care

7

plan, the applicable regulations state that she must agree to abide by the rules of the specific plan.[2] The ALJ correctly noted that the rules of Plaintiff's plan required her to use physicians who were members of the Humana network or non-members approved by Humana in individual cases.

The ALJ found that Plaintiff's primary care physician, Dr. Logrono, did not know or refer the Plaintiff to Dr. Nath. Rather, Plaintiff located Dr. Nath and contacted him by herself. It is completely understandable that Plaintiff would attempt to seek out physicians who believe that a certain procedure would help her regain sensation and mobility in her arm and hand. If this was a case where Humana refused to provide Plaintiff with access to any specialist in her type of injury, she would have a claim that Defendant had not met its obligation to her. However, the ALJ correctly found that was not the case here.

When Plaintiff expressed an interest in surgery with Dr. Nath, Humana referred her to Dr. Grossman, who practices in South Florida and specializes in her type of injury. Dr. Grossman evaluated the Plaintiff, and he noted that he does not do the type of procedure performed by Dr. Nath because he feels it is not worth the risks involved. Instead, Dr. Grossman recommended a different procedure, one which he believed would yield worthwhile improvements. The ALJ found that Dr. Grossman was a specialist in Plaintiff's specific type of injury, and that Humana had met its obligation to Plaintiff by referring her to Dr. Grossman for treatment. The fact that Dr. Grossman recommended a different procedure for Plaintiff than Dr. Nath does not mean that

---

[2] (a) An individual is eligible to elect an MA plan if he or she --
(6) Agrees to abide by the rules of the MA organization after they are disclosed to him or her in connection with the election process. 42 C.F.R. §422.50(a)(6).

8

Humana has not met its obligations. The ALJ found that Dr. Grossman was competent and able to provide effective service to the Plaintiff, and this decision finds substantial support in the record.

Plaintiff's central argument is that Humana would not refer her to a specialist that performs the same procedure as Dr. Nath, as she feels that this specific procedure is her best option. Dr. Nath did state that in his opinion, his type of surgery was Plaintiff's best and only option. However, as stated, Dr. Grossman disagreed with this assessment. The ALJ weighed the evidence, including the doctors' differing opinions, and found that Humana had met its obligations by providing treatment with Dr. Grossman. It is not in my power to substitute my judgment for the ALJ in this matter, and I find this his decision is supported by substantial evidence. Should Plaintiff elect to proceed with surgical options with Dr. Grossman, it is my sincere hope that the procedures will be successful and improve Ms. Chevalier's quality of life.

Accordingly, it is

ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment (DE 18) is DENIED. Defendant's Motion for Summary Judgment (DE 22) is GRANTED.

DONE AND ORDERED in Chambers at West Palm Beach, FL, this 22nd day of March 2007.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

copies to counsel of record